UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HOUSTON CASUALTY COMPANY,

Plaintiff,

v.

PROSIGHT SPECIALTY INSURANCE COMPANY,

Defendant.

18 Civ. 9574 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This federal declaratory judgment action arises from a set of state-court personal-injury lawsuits involving a Manhattan elevator accident.  Plaintiff Houston Casualty Company ("HCC") principally seeks a ruling that defendant New York Marine Insurance Company ("New York Marine"),[1] the insurance carrier for a primary insured, had a duty to defend an additional insured in the state-court litigation.  That issue, however, was resolved by agreement of the parties, promptly after this action was brought, with the carrier conceding the obvious:  It had such a duty.

One narrow issue remains open.  It involves whether the carrier's duty to defend also obliges it to cover the attorneys' fees and costs that the additional insured incurred in attempting to establish the duty to defend at the time the carrier resisted such a duty.  The Court holds, with HCC, that it does.

---

[1] HCC sued New York Marine apparently incorrectly, under the name "Prosight Speciality Insurance Company" ("Prosight").  *See* Dkt. 15; *see also* Dkt. 42 at 1.  In the interests of clarity, the Court refers to Prosight as "New York Marine."

I.      **Factual Background**

The pertinent facts are undisputed.  They are reflected in the documents attached to the Complaint, Dkt. 9 ("Compl."), and the declaration of Daniel W. London, Esq., Dkt. 38 ("London Decl.").

The Court here (1) recaps the underlying lawsuits in New York State Supreme Court; (2) describes the agreement between the primary insured (Nouveau Elevator Industries, Inc., or "Nouveau") and the additional insured (New York University Hospitals Center, or "NYUHC"), and the insurance policy at issue, which Nouveau procured from New York Marine to effectuate that agreement; and (3) recaps this litigation.

A.      **The New York State Court Lawsuits Arising from the Jadusingh Accident**

1.      **The Jadusinghs' Initial Lawsuit Against NYUHC**

On August 22, 2014, Tyrone Jadusingh ("Jadusingh") and his wife, Sheila Jadusingh, ("Sheila") sued NYUHC in New York State Supreme Court in Manhattan.  *See* London Decl., Ex. A (complaint in *Jadusingh v. NYU Langone Medical Center*, No. 158284/2014) ("Jadusingh Compl.").[2]  Jadusingh alleged that on March 2, 2013, he had been working at NYUHC-owned premises at 550 First Avenue in Manhattan (the "Premises").  Jadusingh Compl. ¶¶ 8, 10.  He alleged that, while he was moving a transformer, the transformer caught on a misleveled elevator and fell on him, causing severe personal injuries.  *Id.* ¶ 11.  Jadusingh brought claims of negligence and violations of New York Labor Law ("NYLL") against NYUHC, alleging that it was liable as the Premises' owner, operator, and manager.  *See id.* ¶¶ 1–18.  Sheila brought claims for loss of consortium and for unreimbursed medical expenses.  *See id.* ¶¶ 19–21.

---

[2] Although Jadusingh sued NYUHC under the hospital's familiar name "NYU Langone Medical Center," it appears undisputed that the legal name of this entity is NYUHC.

### 2.    NYUHC's Third-Party Action Against Nouveau

On February 29, 2016, NYUHC filed a third-party complaint in the same action against Nouveau, a New York corporation.  *See* London Decl., Ex. B, ECF pp. 3–13 ("NYUHC Compl.").  NYUHC alleged that Nouveau, at all relevant times, had maintained and repaired the elevators on the Premises, pursuant to an agreement that NYUHC and Nouveau had entered into on April 1, 2011, under which Nouveau was to be responsible for performing these services. NYUHC Compl. ¶¶ 11–12; *see also* London Decl., Ex. F ("NYUHC/Nouveau Agreement" or the "Agreement").

Relevant here, NYUHC further alleged that, under the Agreement, Nouveau had agreed to hold NYUHC harmless for any claims, liabilities, and demands, including attorneys' fees, arising out of the maintenance and repair of the elevators on the Premises, and to procure and maintain an insurance policy on behalf of NYU.  NYUHC Compl. ¶¶ 15–16.  NYUHC alleged that Jadusingh had been an employee of E.J. Electric Industries, Inc. ("E.J. Electric"); that the accident on NYUHC's premises had occurred in the course of his employment; and that if he had been injured due to negligent conduct, then Nouveau—not NYUHC—had been the negligent party.  *Id.* ¶¶ 20–22.

NYUHC sought contribution from Nouveau to the extent of any recovery that the Jadusinghs obtained against NYUHC; indemnification from Nouveau for any losses and damages, including reasonable attorneys' fees and expenses, arising out of the Jadusinghs' lawsuit; and a judgment requiring Nouveau to defend and indemnify NYU against any such losses, damages, fees, and expenses.  *See id.* ¶¶ 24–43.

In its answer, filed June 3, 2016, Nouveau admitted that it had entered into the Agreement with NYUHC.  *See, e.g.*, London Decl., Ex. B, ECF pp. 14–26 ("Nouveau Answer") ¶ 12.  However, it denied liability.  *See, e.g.*, Nouveau Answer ¶¶ 28–30, 34, 38–39, 41.  And,

central here, Nouveau resisted NYUHC's claim that it was obliged to indemnify NYUHC.  *See id.* ¶¶ 34, 36, 41, 43.  Nouveau's answer repeatedly denied all of NYUHC's allegations, including the duty to defend, and referred "all issues of law to the Court for determination."  *See generally id.* ¶¶ 27–43.  Nouveau further brought counterclaims against NYUHC, alleging that NYUHC had been negligent and had breached its agreement, and asserting its right to indemnification and contribution from NYUHC.  *See generally id.* at pp. 9–11.

### 3.   The Jadusinghs' Second Lawsuit, Adding Nouveau

On March 3, 2016, three days after NYUHC's third-party complaint against Nouveau, the Jadusinghs filed a second lawsuit, again in New York State Supreme Court in Manhattan.  *See* London Decl., Ex. C (complaint in *Jadusingh v. Nouveau Elevator Industries, Inc., et al.*, No. 151999/2016) ("Jadusingh Second Compl.").  The new complaint added, to the existing claims against NYUHC, claims against Nouveau and Turner Construction Company ("Turner").[3]

The Jadusinghs' second complaint clarified that the accident had occurred on October 2, 2013, not March 2, 2013, as originally alleged.  *See, e.g.*, Jadusingh Second Compl. ¶ 18.  It brought a claim against Nouveau of negligence, in which Jadusingh developed his theory of negligence in greater factual detail, *id.* ¶¶ 18–25; a claim against NYUHC of negligence, *id.* ¶¶ 27–39; a claim against all defendants of NYLL violations, *id.* ¶¶ 40–45; a claim against Turner, which the complaint identified as the construction manager on the Premises, for breaching its obligation to provide Jadusingh a safe place to work, *id.* ¶¶ 46–68; and claims brought by Sheila, *id.* ¶¶ 69–71.  On June 2, 2016, Nouveau answered the Jadusinghs' second lawsuit.  *See generally* London Decl., Ex. D ("Nouveau Second Answer").

---

[3] In this complaint, the Jadusinghs properly named NYUHC as "New York University Hospitals Center."  *See* Jadusingh Second Compl. at p. 1.

On June 26, 2016, the New York State Supreme Court entered an order consolidating—under the docket number of the Jadusinghs' first action—that action with the Jadusinghs' second action and with any third-party actions.  *See id.*, Ex. E at 6.[4]

### B.    NYUHC's Agreement with Nouveau

On April 1, 2011, NYUHC—as it alleged in its third-party complaint against Nouveau—entered into a written agreement with Nouveau governing Nouveau's work maintaining and repairing elevators at the Premises.  *See* Agreement.  The Agreement was effective for five years unless cancelled in accord with its terms.  *Id*. § 31(A).

Relevant here, the NYUHC/Nouveau Agreement provides that the contractor, Nouveau, "is fully responsible for the safety and health of all persons engaged by the Contractor [defined as Nouveau], and acknowledges that the Owner [defined as NYUHC], with respect to such persons, shall not be construed as nor be held liable for any obligations as, an employer within the meaning of the [Occupational Safety and Health Act of 1970]." *Id.* § 17(B).  The Agreement obligates Nouveau to obtain insurance coverage for its benefit and that of NYUHC, including with respect to general liability, and provides that Nouveau is to secure such coverage with companies satisfactory to the NYUHC.  *See id.* § 25.  The Agreement provides that Nouveau is to ensure that such insurance policies include "the Owner . . . and such other persons as the Owner may designate as an additional insured in a manner so as to provide the additional insureds with coverage no less comprehensive than that being provided to the Contractor, and

---

[4] The parties' briefs in this case, unhelpfully, do not shed light on the subsequent history of the consolidated Jadusingh litigation.  In a recent letter submitted to the Court on May 12, 2020, HCC attached the New York State Supreme Court's decision resolving cross-motions for summary judgment.  *See* Dkt. 41.  In short, the Court largely denied the summary judgment motions, allowing the negligence claims to survive.  *See* Dkt. 41-1 at 9–13.  It did, however, dismiss Jadusingh's NYLL § 240(1) claims against NYUHC and Turner, and his NYLL §§ 200, 240(1), and 241(6) claims against Nouveau.  *See id.* at 14.

which provides coverage in all instances other than the additional insureds' negligence." *Id.*

§ 25(K)(1).

The Agreement, finally, provides that:

> To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, NYU Hospitals Center, . . . and such other persons as the Owner may designate, and their respective . . . employees, agents, representatives, officers and directors . . . from and against all liability claims and demands on account of injury including death to persons resulting therefrom, . . . but only to the extent caused in whole or part by a negligent act, error or omission or breach of statutory duty or obligation of the Contactor or a Subcontractor, anyone directly employed by them or anyone for whose acts they may be liable. The Contractor shall, at its own expense, defend any and all actions at law brought against any person indemnified hereunder and shall pay all attorneys' fees and all expenses and promptly discharge any judgment arising therefrom. . . . The Contractor shall not be required to indemnify or defend an indemnitee for the indemnitee's willful misconduct or negligence.

*Id.* § 25(K).

### C.     Nouveau's General Liability Policy from New York Marine

The central policy at issue here is a comprehensive general liability policy issued by New York Marine and General Insurance Company ("New York Marine") to Nouveau. *See* London Decl., Ex. H ("New York Marine Policy"). The parties appear to agree that this policy is in accord with—and is intended to effectuate—the Agreement between NYUHC and Nouveau. Bearing policy number GL201300000129, the policy covers the period between June 1, 2013 and June 1, 2014. New York Marine Policy at 1. It provides, in pertinent part:

SECTION 1 – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property

damage" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)      The amount we will pay for damages is limited as described [below]; and

(2)      Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

*Id*. at 1 (bolding omitted).  The New York Marine Policy contains the following definitions:

18.      "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage," or "personal and advertising injury" to which this insurance policy applies are alleged.  "Suit" includes:

a.      An arbitration proceeding in which damages are claimed and to which the insured must submit or does submit with our consent; or

b.      Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*Id*. at 21–22.  The New York Marine Policy further provides that if New York Marine defends an insured against a suit and an indemnitee of the insured is named as a party in the suit, New York Marine will defend that indemnitee on certain specified conditions.  *Id*. at 11.

      D.      **This Litigation**

          1.      **HCC's Complaint**

On October 19, 2018, HCC, a Texas-based insurance carrier, initiated this declaratory judgment action against New York Marine.  Compl.  HCC alleged that it had issued a general liability policy (H12PC30131-00) to E-J Electric, Jadusingh's employer.  *Id.* ¶¶ 2, 23.  HCC stated that, pursuant to that policy, it had been providing a defense to NYUHC and the general contractor Turner, in connection with the consolidated lawsuits in New York State Supreme Court arising from Jadusingh's accident involving the elevator installed and maintained by Nouveau.  *Id.* ¶ 3; *see also id.* ¶¶ 24–26.  But, HCC alleged, the primary obligation to defend

these lawsuits belonged to New York Marine.  *See id.* ¶ 17.  And, HCC alleged, New York

Marine had failed to defend and indemnify NYUHC in these lawsuits, as it was obliged to do

under both its policy with Nouveau and the Agreement between NYUHC and Nouveau.  *Id.* ¶¶ 4, 17.

HCC's suit sought contribution for defense costs and a declaration as to the existence and

scope of New York Marine's obligations to defend and indemnify NYUHC.  *Id.* ¶ 5.  HCC

explained that although its policy with E-J Electric obliged it to defend NYUHC, the policy

contained both an "Other Insurance" provision and a "Primary and Non-Contributing Insurance

Endorsement."  *See id.* ¶¶ 28–29.  HCC alleged that, when read in concert with the New York

Marine policy and the agreement between NYUHC and Nouveau, the New York Marine policy

primary and the HCC policy were rendered excess over this primary insurance.  *Id.* ¶ 30.  HCC

alleged that twice—on July 21, 2016, and on August 15, 2017—it had tendered the defense and

indemnification of NYUHC in the Jadusingh action to New York Marine, but that New York

Marine had not agreed to defend NYUHC or to indemnify it.  *Id.* ¶¶ 34–36.

HCC sought declaratory judgments as to NYUHC's additional insured status, *id.*

¶¶ 37–42, New York Marine's duty to defend NYUHC, *id.* ¶¶ 43–50, New York Marine's duty

to indemnify NYUHC, *id.* ¶¶ 51–54, and HCC's entitlement to reimbursement for all amounts

paid by HCC, including attorneys' fees, for the defense of NYUHC in the Jadusingh actions, *id.*

¶¶ 55–61.

On January 25, 2019, New York Marine answered.  Dkt. 15.  Tracking the posture that

Nouveau had taken in answering NYUHC's third-party complaint, New York Marine

categorically denied all of HCC's claims and asserted 20 affirmative defenses.  *See generally id.*

### 2.   Events Leading to the Pending Motion

On April 18, 2019, an initial conference was held before the Hon. Deborah A. Batts, to

whom the case was then assigned.  Thereafter, at the parties' request, a series of conferences and

deadlines in the case were adjourned, in deference to the parties' representation that settlement discussions were in progress.  *See, e.g.*, Dkts. 20–28.

On August 28, 2019, the parties reported a settlement in principle.  Dkt. 29.  Two months later, however, they reported that, although they had otherwise resolved this matter, they were unable to agree on a discrete issue.  The issue, as described by the parties, was whether New York Marine was obliged to cover certain attorneys' fees as part of its obligation to cover defense costs incurred by HCC.  *See* Dkt. 32.  At the parties' request, Judge Batts set a briefing schedule as to that issue.  *See* Dkt. 33; Dkt. 34 (amended schedule).

On December 2, 2019, HCC filed its memorandum of law in support of its position, Dkt. 37 ("HCC Mem."), and the London Declaration and attached exhibits, Dkt. 38.  On December 20, 2019, New York Marine filed its opposition.  Dkt. 39 ("NYM Mem.").

On February 20, 2020, this case was reassigned to this Court.  Three months later, on May 12, 2020, HCC filed a letter requesting leave to reply to an anti-subrogation argument made by New York Marine in its opposition.  *See* Dkts. 40–41.  On May 22, 2020, New York Marine filed a letter opposing that request, or, in the alternative, requesting leave to file a sur-reply. Dkt. 42.[5]

## II.   Discussion

One unresolved issue remains in this case: whether NYUHC is entitled to recover, from New York Marine, the fees and expenses (hereinafter, "fees") it has incurred in attempting,

---

[5] The Court has disregarded the arguments made by HCC in its letter, and denies HCC's request for a reply, and New York Marine's request for a sur-reply, as unnecessary and untimely.  Had a reply been necessary, HCC was at liberty to seek leave soon after New York Marine filed its opposition in December 2019.  Instead, HCC's request came five months after its motion was fully briefed.

successfully, to establish New York Marine's duty to defend NYUHC in the consolidated

Jadusingh lawsuits.[6]  The parties agree that this issue is governed by New York law.

The parties' briefs invoke different strands of case law.  HCC (which stands in NYUHC's

shoes) draws on cases in which an insured has recovered the fees it incurred in defeating a

declaratory judgment action brought by an insurer seeking to establish the lack of a duty to

defend.  *See* HCC Mem. at 1, 6–7.  New York Marine counters with cases holding that an

insurer's duty to defend does not extend to affirmative litigation that an additional insured has

initiated against its own insured.  *See* NYM Mem. at 3–5.

The Court's analysis begins with the line of authority on which HCC relies, as it is by far

the more apposite.

Had an action been brought by New York Marine seeking to establish that it did not have

a duty to defend NYUHC against the Jadusinghs' claims, rather than by NYUHC seeking to

recognize such a duty, New York Marine undeniably would have had a duty to cover the fees

incurred by NYUHC in successfully defending that action.  The New York Court of Appeals'

decision in *U.S. Underwriters Insurance Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597–98

(2004) ("*U.S. Underwriters*") settles that question and illuminates the governing principles.

*U.S. Underwriters* answered a question certified by the United States Court of Appeals

for the Second Circuit.  *See* 369 F.3d 102, 110 (2d Cir. 2004).  Explaining the certification, the

Circuit noted that New York courts had carved out a "narrow exception" to the general

"American" rule that a prevailing party cannot recover attorneys' fees.  *Id.*  "Under this

---

[6] The parties' briefs do not clarify whether the fees at issue include, in addition to those NYUHC incurred in state court in seeking to establish New York Marine's duty to defend, those incurred in this litigation.  To the extent such fees are also in dispute, the Court's resolution of this dispute equally applies to such outlays.

exception, an insured who prevails in a declaratory action brought by an insurance company seeking to deny a duty to defend and indemnify is allowed to recover fees expended in defending against that action.  The insured is allowed fees, that is, 'when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations.'" *See id*. at 110 (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979)).

The Circuit noted, however, a division of authority about the scope of that exception, in particular, whether a fee award could be available where the insurer—while disputing its duty to defend the insured—nevertheless, to assure that it did not breach that duty, defended the insured while the duty issue was being litigated.  *See id*. at 111 (collecting cases).  In *U.S. Underwriters*, an insurer had brought an (unsuccessful) action seeking a declaratory judgment that it did not have a duty to defend, but it nevertheless provided a defense to the insured (Shelby) in the underlying personal injury action.  *See id.* at 112.  The Second Circuit certified this question:

> Whether, in a case where an insurance company has brought a declaratory judgment action to determine that it does not have obligations under the policy but has defended in the underlying suit, a defendant prevailing in the declaratory judgment action can be awarded attorneys' fees expended in defending against that action.

*Id.*

The New York Court of Appeals answered in the affirmative.  It wrote:

> It is well settled in New York that a prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule.  However, an insured who is "cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations," and who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's action (*Mighty Midgets*, 47 NY2d at 21).  The reasoning behind *Mighty Midgets* is that an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action.

> In the instant case, it is undisputed that Shelby, a named insured under the policy, was cast in a defensive posture by U.S. Underwriters in their dispute over whether the insurer had a duty to defend and indemnify Shelby in the underlying personal

11

injury action.  Further, it is undisputed that Shelby successfully defended against
the insurer's summary judgment motion and thereby prevailed in the matter.

Based on *Mighty Midgets*, Shelby is entitled to recover attorneys' fees.  We hold
that under *Mighty Midgets*, an insured who prevails in an action brought by an
insurance company seeking a declaratory judgment that it has no duty to defend or
indemnify the insured may recover attorneys' fees regardless of whether the insurer
provided a defense to the insured.  Given that the expenses incurred by Shelby in
defending against the declaratory judgment action arose as a direct consequence of
U.S. Underwriters' unsuccessful attempt to free itself of its policy obligations,
Shelby is entitled to recover those expenses from the insurer.  In other words,
Shelby's recovery of attorneys' fees is incidental to the insurer's contractual duty
to defend.

*U.S. Underwriters*, 3 N.Y.3d at 597–98 (internal citations omitted).

*U.S. Underwriters* is not controlling here, as this litigation regarding the existence of a

duty to defend was initiated by the insured, NYUHC.  NYUHC did so twice.  It brought the

third-party complaint against Nouveau in state court, seeking a declaration that, under the

NYUHC/Nouveau agreement, Nouveau's insurer (New York Marine) had a duty to defend

NYUHC against the Jadusinghs' claims.  Later, HCC, standing in NYUHC's shoes, brought this

lawsuit, in which it again sought to establish that New York Marine had this duty.

New York Marine argues that this distinction is dispositive: that NYUHC's initiation of

litigation over the duty to defend means that it must bear the fees it incurs in such litigation.  But

that is wrong.  Although the issue appears to arise infrequently, the limited on-point case law

rejects a bright-line rule in which recovery of fees in an action establishing a duty to defend

inexorably turns on whether the insured or insurer initiated that action.

Felicitously, Judge Davison addressed that question just last year, in a thoughtful and

persuasive Report and Recommendation.  *See Hervochon v. Iona Coll.*, No. 14 Civ. 6017 (CS)

(PED), 2019 WL 2451431, at \*4–5 (S.D.N.Y. Feb. 15, 2019), *report and recommendation*

*adopted*, 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019).  Reviewing the reasons a prevailing

insured may recover its fees expended in establishing the duty to defend, Judge Davison noted

that the rule permitting such recovery "when an insured has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations" reflects the view that "an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action." *Id.* at *4 (internal quotation marks and citations omitted). As such, Judge Davison reasoned, an insured's fee recovery in these circumstances "is not so much an exception to the American rule that litigants pay their own fees and expenses, as it is a right that 'arises from th[e] contractual duty' to defend.'" *Id.* (alteration in original) (citing *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121 (JPO) (JCF), 2013 WL 364734, at *3 (S.D.N.Y. Jan. 31, 2013), *report and recommendation adopted*, 2013 WL 1387017 (S.D.N.Y. Apr. 5, 2013) (quoting *Chase Manhattan Bank v. Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005*, 690 N.Y.S.2d 570, 573 (1st Dep't 1999))).

Pertinent here, Judge Davison noted that, in some cases, an insured who initiated the declaratory judgment litigation that established the duty to defend has been permitted to recover its fees from the insurer:

> As "[i]t seems anomalous for the entitlement to fees to turn on the fortuity of whether a party to an insurance contract is cast as the plaintiff or defendant," [*Danaher Corp.*, 2013 WL 364734, at *3] (quoting *Cowan v. Ernest Codelia, P.C.*, No. 98 Civ. 5548 [(JGK) (JF)], 2001 WL 30501, at *3 (S.D.N.Y. Jan. 12, 2001)), "courts have made clear that in certain cases the rule need not be quite so mechanically applied," *id.* (citing *City of New York v. Zurich-American Insurance Group*, [798 N.Y.S.2d 708], 2004 WL 2403179, at *1 (N.Y. Sup. Ct. Oct. 22, 2004); and *Hurney v. Mattson,* . . . 399 N.Y.S.2d 449, 450 (2d Dep't 1977)). Consequently, "in unusual circumstances, a court may look beyond the labels 'plaintiff' and 'defendant' to determine whether an insured is in an offensive or defensive position vis à vis its insurer in a dispute over the duty to defend (and indemnify)." *Id.* at [*]4.

*Id*. at *5. *See, e.g.*, *Perchinsky v. State*, 660 N.Y.S.2d 177, 181 (3d Dep't 1997) (noting principle that a party pursuing a third-party claim is entitled to indemnification when claim is "an essential

component of the defense of the main action, pursued in good faith and not contrary to the language of the contractual indemnity provision," and holding that insured's recovery "should include not only the costs of defending the main claim, but also the costs of pursuing the third-party actions because the filing of the third-party actions was an essential component of the defense of the main action, pursued in good faith and not contrary to the language of the contractual indemnity provision"); *see also Jenel Mgmt. Corp. v. Pac. Ins. Co.*, 865 N.Y.S.2d 58, 59 (1st Dep't 2008) (where plaintiff-insurer initiated a third-party claim against the insured of the defendant-insurer, holding that the plaintiff-insurer's "third-party claims against the [insured] were an essential component of their defense of the main underlying action, and, accordingly, plaintiff insurer is entitled to reimbursement of the . . . attorneys' fees it incurred in prosecuting those claims."); *cf. Springstead v. Ciba-Geigy Corp.*, 815 N.Y.S.2d 624, 626 (2d Dep't 2006) (third-party plaintiff, a defendant corporation in the underlying lawsuit, was entitled to indemnification for pursuing its third-party action against the entity that injured the plaintiff in the underlying action, because the "the third-party action was done in good faith as an essential component of [the third-party plaintiff]'s defense of the main action and was not contrary to the language of the contractual indemnity provision" (citing *Perchinsky,* 660 N.Y.S.2d at 181)).[7]

On the factual record before it, the Court has no difficulty finding that NYUHC, and derivatively HCC, like the insureds in the cases above, are entitled here to recover the fees they incurred in establishing the duty to defend.  That is because the record reflects that, from the jump, New York Marine and its insured, Nouveau, resisted New York Marine's now-conceded

---

[7] There is case law from other states in accord.  *See, e.g.*, *Great W. Cas. Co. v. Marathon Oil Co.*, 315 F. Supp. 2d 879, 882–83 (N.D. Ill. 2003) (holding that under Illinois law, insurer's duty to defend includes a duty to pay the costs of insured's successful prosecution of a third-party indemnification and contribution action, and collecting cases).

duty to defend NYUHC against the Jadusinghs' claims. They did so in Nouveau's answer to NYUHC's third-party complaint, in which it denied such a duty; in Nouveau's counterclaim seeking a judgment against NYUHC and an accompanying declaration that it lacked such a duty; and in New York Marine's answer in this federal litigation, in which it again denied such a duty. They persistently and seemingly reflexively denied this duty despite the texts of the NYUHC/Nouveau Agreement and the New York Marine Policy, which each made this duty plain.

Under these circumstances, NYUHC cannot be said to have precipitously initiated or needlessly pursued litigation over the duty to defend. Far from it. Nouveau's and New York Marine's sequential denials of a duty to defend NYUHC against the Jadusinghs' pending personal injury claims effectively forced NYUHC's hand and made litigation over the duty to defend inevitable.

In these circumstances, notwithstanding its formal status as a plaintiff vis-à-vis Nouveau and New York Marine, NYUHC is properly viewed as an insured who prevailed on the merits after being "cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." *U.S. Underwriters*, 3 N.Y.3d at 598 (quoting *Mighty Midgets*, 47 N.Y.2d at 21). Therefore, like the fees of the insured in *U.S. Underwriters*, the fees "incurred by [NYUHC] in [pursuing] the declaratory judgment action arose as a direct consequence of [the insurer's] unsuccessful attempt to free itself of its policy obligations." *Id*. NYUHC is therefore "entitled to recover those expenses from the insurer." *Id*.

Finally, the precedents on which New York Marine relies are inapposite, including for the reasons stated by HCC. These cases largely involved affirmative claims for relief by insureds that were distinct from the underlying liability. As such, the claims were not an

essential component of the defense; litigation as to them fell outside the duty to defend.  *See, e.g.*, *P.J.P. Mech. Corp. v. Commerce and Indus. Corp.*, 882 N.Y.S.2d 34, 47 (1st Dep't 2009) (insured's claim for balance due on construction contract not an essential component of contractor's defense to property damage liability).  New York Marine also invokes the anti-subrogation rule, under which an insurer may not recover, from its insured, losses for which the insurer agreed to provide coverage.  *See, e.g.*, *Millennium Holdings LLC v. Glidden Co.*, 27 N.Y.3d 406, 415 (2016).  That doctrine, too, is irrelevant here.  Finally, New York Marine cites cases in which an insured, which was afforded a joint defense, alleged a conflict entitling it to independent counsel to pursue affirmative claims.  *See, e.g.*, *Nat'l City Bank. v. N.Y. Cent. Mut. Fire Ins. Co.*, 775 N.Y.S.2d 679, 680 (4th Dep't 2004).  These cases, too, are inapposite. Tellingly, New York Marine does not cite any case holding that an insured that was forced to initiate successful declaratory judgment litigation in the face of an insurer's pertinacious denial of a duty to defend was ineligible to recover fees incurred in that litigation.  That is the apt context here.

## CONCLUSION

For the reasons set out above, the Court holds that NYUHC and its subrogee HCC are entitled to the fees incurred in litigating New York Marine's duty to defend.  The Court denies HCC's request to file a reply, Dkt. 41, and New York Marine's request for a sur-reply, Dkt. 42.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 37 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 27, 2020
        New York, New York